

**Cory C. Kirchert**

**O** 202.417.7052 | **C** 703.405.7974
ckirchert@secillaw.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/23/2024

May 23, 2024

Honorable Gregory H. Woods
U.S. District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

**MEMORANDUM ENDORSED**

Re:   Pre-Motion Letter, SEC v. Fernando Passos, 1:22-CV-03156-GHW

Dear Judge Woods:

We represent Defendant Fernando Passos, a Brazilian citizen and former CFO of Brazilian company, IRB Brasil Resseguros S.A. ("IRB"). The common stock of IRB was listed exclusively on the Brazilian market, was not registered with the SEC, and was not listed or traded on any U.S. market. By this letter we request a pre-motion conference in anticipation of filing of a motion to dismiss Plaintiff's Complaint ("C") under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). The Complaint alleges two alternative claims, namely, that Defendant violated *or* aided and abetted IRB's violation of Section 10(b) of the Securities Exchange Act of 1934 [15 USC § 78j(b)] and Rule 10b-5 promulgated thereunder [17 CFR § 240.10b-5]. (C ¶¶ 3, 49-55). Plaintiff does not consent to dismissal.

The Complaint alleges that Defendant made three misstatements to increase IRB' stock price:

- On Feb. 26, 2020, after market close, Defendant caused the Brazilian news media to publish the false story that Berkshire Hathaway Inc. ("BHI") owned IRB common stock. (C ¶¶ 1, 12) ("Rumor"). The Rumor was not attributed to IRB or Defendant, and for four trading days during which the Rumor remained uncorrected—Feb. 27, 2020 to Mar. 3, 2020 (the "Rumor Period"), IRB stock price declined 12.5%, a drop that includes the 6.7% increase on Feb. 27, 2020. After market close on Mar. 3, 2020, BHI [and IRB] published statements that the Rumor was false ("Correction").

- From Feb. 24-28, 2020, Defendant made "false and misleading statements" to five people (C ¶¶ 1, 12, 22): one in Brazil (Feb. 23, 2020) (C ¶ 19); three in London (Feb. 24, 2020) (C ¶ 23); and one in the U.S (Feb. 28, 2020) (C ¶ 30). All but the last statement did not involve BHI, and in the last, Defendant only *implied* the truth of the Rumor.

- On Mar. 2, 2020, during a call with analysts, IRB's CEO "made statements *indicating* that Berkshire had invested in IRB" (C ¶ 31). The locations of the CEO, Defendant, and analysts are not specified.

These alleged misstatements were part of a purported scheme to have the Rumor published and increase IRB's stock price. The Complaint details Defendant's steps to promote the scheme:



(1) he acquired an informal IRB stock schedule ("Schedule") (C: ¶ 18, Feb. 21, 2020); (2) added BHI as shareholder to the Schedule (C ¶¶ 17-18, Feb. 21, 2020); (3) sent text images of the Schedule to IRB's communications manager (C ¶ 18, Feb. 22, 2020); (4) sent the Schedule to the IRB's chairman (C ¶ 19, Feb. 23, 2020); (5) sent text messages to the IRB manager with journalists' contact information (C ¶ 20, Feb. 23, 2020); (6) sent an email dated February 21, 2020, to the IRB manager allegedly from IRB's CEO to BHI thanking BHI for the "investment in IRB" ("Email") (C ¶ 21, Feb. 23, 2020); (7) *while in New York*, sent text messages to the IRB employee in Brazil [again] urging the promotion of the Rumor to the Brazilian press. (ECF 1: ¶ 25 [Feb. 26, 2020]); (8) *while in New York*, [again] texted the IRB manager in Brazil the Schedule and Email (C ¶ 25, Feb. 26, 2020); and (9) "caused" IRB's CEO to "indicate" that the Rumor was true during teleconference call with Defendant and securities analysts (C ¶ 31, Mar. 2, 2020).

**Rule 12(b)(2).** Rule 4 lists three bases personal jurisdiction, none of which is satisfied here. The first, 4(k)(1)(A), is inapplicable because Defendant is not domiciled in New York, and there is no allegation that he personally transacted business within or contracted to provide products to New York (CPLR § 302(a)(1)), committed a tort in New York (his statement of Feb. 28, 2020, "implying" the Rumor's truth did not cause purchases of overpriced IRB stock) (CPLR § 302(a)(2)), regularly did personal business in New York or derives substantial revenue from interstate or international commerce (CPLR § 302(a)(3)), or owned, used or possessed real property in New York (CPLR § 302(a)(4)).

The second basis, 4(k)(1)(C), relies on 15 U.S.C. § 78aa. ("Section 27") (C ¶ 5). Plaintiff does not allege that Defendant "is found or is an inhabitant or transacts business" in the U.S. under Section 27(a). Under Section 27(b)(1), the Complaint alleges, in effect, that two steps taken in the U.S.— steps (7) and (8) above—were "significant," even though these were simply actions repeating those taken in in Brazil earlier (C ¶ 47). The complaint also fails to allege that these "significant" steps were even a *but for* cause of the Rumor's publication. In sum, the Complaint recites how all significant steps occurred in Brazil: the creation of the Schedule, fabrication of the Email, actions of other IRB employees, and the publication of the Rumor.

Under Section 27(b)(2), the Complaint claims that Defendant's alleged misstatements caused "a foreseeable substantial effect" within the U.S. and it identifies two groups of shareholders who entered the Brazilian market to buy IRB stock. One group, relying on the Rumor, entered the Brazilian market *during* the Rumor Period and overpaid for IRB shares, but the overpayment and losses are unalleged. The other group, which had purchased IRB stock *before* the Rumor Period and held $1.6 billion of stock *during* that period, *could not have relied on Defendant's misstatements* and, therefore, could not have *overpaid for IRB stock* as a consequence of Plaintiff's alleged violation. Accordingly, any losses on their holdings were not caused by the alleged violation.

As for Rule 4(k)(2), Defendant submits that Section 27(b) restricts long-arm jurisdiction to conduct coincident in scope with Constitutional limits. Because Section 27(b) is not satisfied, neither is 4(k)(2).

**Rule 12(b)(6).** The Complaint additionally fails to state a claim against Defendant as to any material misstatement:

- It does not allege that IRB or Defendant "made" the statement that BHI owned IRB stock, as required *Janus Capital Group, Inc. v. First Derivative Traders, Inc.*, 564 U.S. 135 (2011). It was Brazilian media, which was free to not to publish the Rumor, "made" this unofficial statement, *SEC v. Tambone*, 597 F.3d 436, 443 (1st Cir. 2010); *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011); *SEC v. Espuelas*, 699 F. Supp. 2d 655, 660 (S.D.N.Y. 2010).

- It does not allege that Defendant "disseminated" a material misstatement of IRB, similar to that under *Lorenzo v. SEC*, 587 U.S. 71, 83-84 (2019), because IRB had not previously made a material misstatement that Defendant reiterated to an investor. *SEC v. Rio Tinto PLC,* 41 F4th 47, 53 (2d Cir. 2022) (*Lorenzo* does not expand definition of statement-maker under Rule 10b-5(b)).

- It does not allege that Defendant, rather than IRB's CEO, made the unspecified *oral* statement on Mar. 2, 2020, "indicating" that BHI was an IRB shareholder.

- It fails to particularize, as required by Rule 9(b), the statements as to time, location of, and content of the alleged misstatements. *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004), *See, SEC v. Egan,* 94 F. Supp.2d 558, 561 (S.D.N.Y. 2014); *SEC v. Espuelas*, 698 F. Supp.2d 415, 424 (S.D.N.Y. 2010).

- It does not allege that IRB stock is listed on a *domestic* exchange or that any purchases occurred in *domestic* transactions. *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010); *Caiola v. Citibank, N.A.*, 295 F.3d 312, 327 (2d Cir. 2002); *Absolute Activist Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012).

- It does not allege that the scheme, the publication of the Rumor, and the consequences of the publication, which all occurred in Brazil, were not so foreign in nature as to be "impermissibly territorial" and therefore dismissible. *Cavello Bay Reinsurance Ltd. v. Stein*, 986 F.3d 161, 165-66 (2d Cir. 2021); *Parkcentral Global HUB Ltd. v. Porsche Automobile Holdings Se*, 763 F.3d 198 (2d Cir. 2014).

- It does not specify how Defendant used, directly or indirectly, a "means or instrumentality of interstate commerce, or of the mails or any of the facility of any national securities exchange" given that "general reference to foreign commerce in the definition of "interstate commerce" cannot defeat the presumption against extraterritoriality." *Morrison*, 561 U.S. at 262.

Application granted.  Defendant's request for a pre-motion conference is granted.  The Court will hold a teleconference regarding Defendant's proposed motion to dismiss on May 30, 2024 at 2:00 p.m.  The parties are directed to the Court's Individual Rules of Practice in Civil Cases, which are available on the Court's website.  Rule 2 of the Court's Individual Rules contains the dial-in number for the conference and other relevant instructions.  The parties are specifically directed to comply with Rule 2(C) of the Court's Individual Rules.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 27.

Respectfully submitted,

SECIL Law PLLC

/s/ *Cory C. Kirchert*
Cory C. Kirchert
John P. Rowley III
Adriaen M. Morse Jr.

*Counsel for Fernando Passos*

SO ORDERED.

Dated: May 23, 2024
New York, New York

GREGORY H. WOODS
United States District Judge